**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
------------------------------------------------------------

| | |
|---|---|
| ALEX VEMAN, | |
| Plaintiff, | |
| | **Civ. No.** |
| v. | |
| | **COMPLAINT** |
| CITY OF EASTON, EASTON POLICE DEPARTMENT, OFFICER MATTHEW SNYDER, in his individual and official capacities, EASTON HOSPITAL, NORTHAMPTON COUNTY, NORTHAMPTON COUNTY DEPARTMENT OF CORRECTIONS, and NORTHAMPTON COUNTY ASSISTANT DISTRICT ATTORNEY ROBERT EYER, in his individual and official capacities, | **DEMAND FOR JURY TRIAL** |
| Defendant(s). | |

------------------------------------------------------------

Plaintiff ALEX VEMAN ("Plaintiff" or "Mr. Veman"), by and through his undersigned counsel, files this Complaint against Defendants CITY OF EASTON, EASTON POLICE DEPARTMENT, EASTON HOSPITAL, OFFICER MATTHEW SNYDER, in his individual and official capacities, NORTHAMPTON COUNTY, NORTHAMPTON DEPARTMENT OF CORRECTIONS, and NORTHAMPTON COUNTY ASSISTANT DISTRICT ATTORNEY ROBERT EYER, in his individual and official capacities (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1.      This is a federal civil rights action brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Section 1557 of the ACA, 42 U.S.C. § 18116 ("ACA"); Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; 42 U.S.C. § 1983; and state law claims for malicious prosecution and intentional infliction of emotional distress.

1

2.      Plaintiff is deaf and relies on American Sign Language ("ASL") as his primary means of communication.

3.      Plaintiff has limited proficiency in written English, as ASL is a distinct language with its own unique grammar and syntax, wholly different from English.

4.      On January 18, 2023, Plaintiff was a victim of a brutal assault in Easton, Pennsylvania, sustaining serious injuries including but not limited to a fractured jaw, broken ribs, and a concussion.

5.      Plaintiff requires the services of a qualified ASL interpreter to ensure effective communication, particularly in complex situations or when discussing legal, medical, or other technical matters.

6.      Despite Plaintiff's visible injuries and desperate attempts to communicate, Defendant City of Easton, Defendant Easton Police Department, and Defendant Officer Snyder failed to obtain a qualified interpreter, or any other effective aids for communication to ensure effective communication with Plaintiff. Defendant Officer Snyder did not get any statement from Plaintiff, either written or through ASL. Plaintiff was wrongfully arrested based entirely on the verbal statements of self-interested witnesses.

7.      Confused, injured, and unable to communicate his version of events or understand the nature of the accusations against him, Mr. Veman was plunged into a nightmare of isolation and fear.

8.      Following his wrongful arrest, Mr. Veman was treated at Easton Hospital, which completely failed to accommodate him, and he subsequently endured four days of detention at Northampton County Prison in communication isolation. He was denied medical care for his

serious injuries, was unable to contact family or counsel, and was deprived of his basic constitutional rights.

9.      Plaintiff then endured over twenty-one months of baseless criminal charges before being acquitted on October 30, 2024, after a jury deliberated for mere minutes to find him not guilty.

10.     This case exposes the tragic consequences of systemic indifference to the rights of deaf individuals. For over three decades, the ADA has mandated that public entities, including law enforcement agencies and correctional facilities, and health care providers, ensure effective communication with deaf persons.

11.     This systemic indifference comes even though the U.S. Department of Justice ("DOJ") has provided extensive guidance clarifying the obligations of public entities to provide qualified interpreters and other auxiliary aids and services to ensure effective communication with deaf individuals in various contexts, including when receiving treatment at hospitals), during law enforcement interactions, and in correctional settings. For example, the DOJ publications "ADA Guide for Law Enforcement Officers" (2006) and "Model Policy for Law Enforcement on Communicating with People Who Are Deaf or Hard of Hearing" (2009) outline the requirements for securing interpreter services during critical interactions with deaf individuals, such as arrests, interrogations, and detentions and ADA Business Brief: Communicating with People Who Are Deaf or Hard of Hearing in Hospital Settings" (2005) outline the requirements for securing interpreter services during critical interactions with deaf individuals in hospital settings.

12.     Defendants City of Easton, Easton Police Department, Officer Matthew Snyder, Easton Hospital, Northampton County, Northampton Department of Corrections, and Northampton County Assistant District Attorney Robert Eyer have consciously chosen to operate

with a flagrant disregard for the rights of deaf individuals, including Plaintiff. They maintain no policies for providing interpreter services, no procedures for securing readily available interpreters, no training for officers on communicating with deaf individuals, and no oversight to ensure ADA compliance.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, as the claims arise under the Constitution and laws of the United States.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy.

15.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as all events giving rise to this action occurred within this District.

## PARTIES

16.    Plaintiff, Mr. Veman, is an adult individual who is completely deaf and resides in Morris County, New Jersey. He communicates primarily in ASL.

17.    Defendant Northampton County is a municipal entity that, directly and/or indirectly through Defendant Northampton County Department of Corrections, funds, supervises, and/or operates correctional facility Northampton County Prison, and is responsible for the care and custody of inmates, including the provision of auxiliary aids and services for individuals with disabilities.  Defendant Northampton County also directly and/or indirectly through Defendant Northampton County District Attorney's Office, funds, supervises, and/or operates the prosecutor's office in Northampton County.

18.    Defendant Northampton County Department of Corrections is a municipal entity and agency of Defendant Northampton County that supervises and operates correctional facility Northampton County Prison, and is responsible for the care and custody of inmates, including the provision of reasonable accommodations for individuals with disabilities.

19.    Defendant Northampton County Assistant District Attorney Robert Eyer is employed by the Northampton County District Attorney's Office and acted under color of state law when prosecuting Plaintiff.  He is being sued in both his individual and official capacities.

20.    Defendant City of Easton is a municipal entity existing under the laws of the Commonwealth of Pennsylvania.

21.    Defendant Easton Police Department is a municipal entity and is responsible for the oversight, training, and supervision of its police officers and law enforcement agencies. Easton Police Department is operated by Defendant City of Easton.

22.    Defendant Officer Matthew Snyder is employed by the Easton Police Department and acted under color of state law when he investigated and arrested Plaintiff. He is being sued in both his individual and official capacities.

23.    Defendant Easton Hospital is a non-profit hospital with a principal place of business at 250 South 21st Street, Easton, PA 18042.

24.    Plaintiff is profoundly deaf and cannot communicate verbally. While he can engage in basic written communication, his primary and most effective means of communication is American Sign Language (ASL). His limited English proficiency means that complex or technical communications through writing are ineffective and inadequate, particularly in medical, legal, or emergency situations.

25.     Plaintiff's reliance on ASL requires the use of qualified interpreters or similarly effective aids to ensure he can fully understand and be understood in interactions with law enforcement, medical professionals, and others. Without an ASL interpreter, Plaintiff cannot effectively communicate about medical symptoms, understand legal rights, or participate meaningfully in complex interactions.

26.     Plaintiff has no history of violent conduct. He is known to family and friends as a peaceful individual who avoids conflict.

## STATEMENT OF FACTS

27.     On January 18, 2023, Plaintiff was brutally attacked by a man at 1100 Washington Street in Easton, Pennsylvania.

28.     Plaintiff had been invited to the residence by a tenant at that address who was the male attacker's female companion.

29.     The male attacker, who has a background in mixed martial arts, violently attacked Plaintiff, striking him repeatedly in the face and Plaintiff, unable to defend himself against Ragland's assault, suffered severe injuries.

30.     As a further direct result of the assault, Plaintiff suffered multiple broken ribs, causing severe pain, difficulty breathing, and requiring extensive medical treatment.

31.     As a further direct result of the assault, Plaintiff suffered extensive bruising across his body, including his face, chest, back, and limbs.

32.     As a further direct result of the assault, Plaintiff suffered defensive wounds on his arms and hands, sustained as he tried to protect himself from the male attacker's blows.

33.     Defendant Officer Snyder arrived at the scene at approximately 9:45 PM on January 18, 2023, in response to a 911 call placed by the male attacker's female companion.

34.    Upon arrival, Officer Snyder observed Plaintiff's severe visible injuries, including bleeding facial wounds, difficulty breathing, and extensive bruising.

35.    The male attacker and his female companion had no visible injuries, despite the female companion's claim that Plaintiff had assaulted her and that the male attacker had intervened to protect her.

36.    Officer Snyder observed physical evidence at the scene consistent with a violent assault, including overturned furniture, broken objects, and blood spatter on the walls and floor.

37.    Officer Snyder deliberately ignored multiple visual cues and gestures from Plaintiff conveying his deafness and request for auxiliary aids and services such as sign language interpreters.  For example, Plaintiff pointed to his ears, the universal sign for deafness.

38.    Officer Snyder ignored Plaintiff's repeated requests for an interpreter and proceeded to conduct his investigation without ensuring that Plaintiff could understand what was happening or effectively communicate his version of events.

39.    Officer Snyder relied solely on the verbal statements of the male attacker and his female companion, who provided a false and self-serving account of the incident, claiming that Plaintiff was the aggressor.

40.    A proper investigation conducted with the assistance of qualified ASL interpreters would have revealed that (1) Plaintiff was lawfully invited to the residence by the male attacker's female companion; (2) the male attacker had initiated the assault against Plaintiff without provocation; (3) the female companion had a documented history of making false police reports, particularly in the context of domestic disputes involving the male attacker; (4) the male attacker had a documented pattern of violence and aggression; and (5) there was no credible evidence to support arresting much less bringing criminal charges against Plaintiff.

41.     In arresting Plaintiff, Officer Snyder disregarded the overwhelming physical evidence indicating that Plaintiff was the victim of a brutal assault, including Plaintiff's severe and visible injuries, the complete lack of injuries to the male attacker and his female companion, and the condition of the apartment, which showed signs of a violent struggle.

42.     Officer Snyder also failed to consider or interview other potential witnesses at the scene who could have provided information about the incident.

43.     When Officer Snyder arrived at the scene, the situation was fully contained and secure. All of the parties were separated and calm, no weapons were present, and there were no ongoing threats to safety or property. Multiple officers were present to maintain control of the scene. Despite having ample time and opportunity to secure interpreter services, either in-person or through readily available video remote interpreting services, Officer Snyder made no attempt to secure such services to establish effective communication with Plaintiff.

44.     Officer Snyder's failure to obtain an interpreter deprived Plaintiff of the opportunity to effectively communicate his version of events, understand the accusations against him, or assert his rights.

45.     Upon information and belief, Defendant City of Easton and Defendant Easton Police Department have a long-standing policy, custom, and/or practice of not providing qualified sign language interpreters or other auxiliary aids and services necessary to ensure effective communication with individuals who are deaf or hard of hearing.

46.     Despite being on notice of their obligations under federal law, Defendant City of Easton and Defendant Easton Police Department failed to: (1) contract with any sign language interpretation services; (2) train officers on communicating with deaf individuals; (3) maintain any TTY or video relay devices at the police station; (4) develop protocols for securing interpreter

services; or (5) implement policies regarding accommodation of deaf individuals during police encounters, investigations, or arrests.

47.    After an EMT provided Mr. Veman with a piece of pen and paper in which he wrote the word "hospital," Mr. Veman was arrested and taken to Easton Hospital.  The police never tried to get Mr. Veman's side of the story.

48.    Officer Snyder's police report falsely asserted that Plaintiff's "vague" written statement (which was the word "hospital") justified Plaintiff's arrest, while failing to disclose that Officer Snyder made no attempt to ensure effective communication with Plaintiff.

49.    Based entirely on verbal statements from hearing witnesses, Officer Snyder arrested Plaintiff and charged him with criminal trespass as a felony of the second degree, two counts of simple assault, strangulation, and harassment.

50.    Following his arrest, Plaintiff was transported to Defendant Easton Hospital, where medical staff failed to provide ASL interpretation services, despite federal law requiring hospitals to ensure effective communication with deaf patients.

51.    The denial of appropriate communication accommodation at the hospital resulted in an inability to communicate with the medical providers his symptoms and injuries.

52.    Mr. Veman was at Easton Hospital for several hours. Throughout this time, he repeatedly requested an ASL interpreter through gestures, writing, and pointing to his ears. Hospital staff acknowledged his requests but took no action to provide an interpreter or any other effective communication aid.

53.    Upon information and belief, the hospital made no attempt to obtain sign language interpreters. Instead, staff conveyed medical information only through rudimentary gestures and written English that Plaintiff could not understand due to his limited English proficiency. The lack

of interpreters resulted in ineffective communication that threatened his care. For instance, he was put in an MRI even though he had a cochlear implant and a heart condition, which, depending on the model of MRI could have caused him grave injury.

54.    After being treated at the hospital, Mr. Veman was transported to Northampton County Prison. Despite his obvious injuries and ongoing medical needs, the transition between medical care and detention occurred without any effective communication about his medical condition, prescribed treatments, or follow-up care requirement.

55.    Upon arrival at the prison, Plaintiff repeatedly requested but was not provided with a qualified ASL interpreter at any time including the intake process. As a result, he was completely unaware of the charges against him, the procedures involved in his detention, or his rights as a pre-trial detainee.

56.    Plaintiff also repeatedly requested but was not provided an interpreter for his medical screening, preventing him from communicating the nature and extent of his injuries to medical staff and receiving necessary medical attention. As a direct result, Plaintiff was denied necessary medical treatment and endured severe untreated pain from his broken ribs, fractured jaw, and concussion throughout his detention.

57.    During the course of his detention, Plaintiff was rarely provided with a means of communicating in writing with prison staff to report his medical needs, request assistance, or understand prison rules and regulations. Plaintiff was isolated due to his inability to communicate with guards or other inmates, causing him to experience fear and emotional distress.

58.    During his four-day detention, Plaintiff was unable to understand the charges against him, the legal process he was facing, or the reasons for his continued confinement.

59.    Throughout his detention, Plaintiff was denied necessary and timely treatment for his serious injuries, including pain medication, a comprehensive medical evaluation, and follow-up care for his facial fractures, broken ribs, and concussion, leading to prolonged pain and potential long-term complications from delayed proper medical care.

60.    Further, since Defendants Northampton County and Northampton County Department of Corrections do not have a TTY or videophone, Plaintiff was unable to contact his family or an attorney to inform them of his situation, seek their assistance in securing his release, and begin preparing his defense.

61.    A sympathetic corrections officer, recognizing the complete communication barrier, eventually allowed Mr. Veman to use the officer's personal cell phone to connect to his wife about arranging bail. This brief exchange was Mr. Veman's only contact with the outside world during his detention. The officer informed Mr. Veman in writing that this accommodation violated prison rules.  The prison, however, provided no alternative means of communication.

62.    Defendant Northampton County and Defendant Robert Eyer then maintained charges against Plaintiff for twenty-one months despite the existence of exculpatory evidence and knowledge that the police never attempted to get Plaintiff's side of the story.

63.    Defendant Northampton County and Defendant Robert Eyer continued with the prosecution despite evidence that the male attacker's female companion had in fact invited Plaintiff to the residence, that the male attacker had a history of attacking visitors at the residence, and that physical evidence contradicted all claims of forced entry.

64.    Defendants City of Easton, Easton Police Department, Northampton County, and Northampton County Department of Corrections have no written policies regarding the accommodation of deaf individuals, no contracts with ASL interpretation services, no training

programs for staff, employees, or officers regarding deaf communication, and no procedures for identifying and accommodating disabilities during arrest, booking, and/or detainment.

65.     As a direct and proximate result of Defendants' conduct, Mr. Veman suffered concrete injuries including but not limited to: (1) the inability to communicate his medical symptoms, resulting in inadequate treatment and prolonged pain; (2) prevention from understanding and exercising his legal rights during arrest and detention; (3) deprivation of meaningful communication with family members and legal counsel; (4) psychological trauma from being isolated without any effective means of communication; (5) ongoing anxiety and distress about future interactions with law enforcement and medical providers and being left in pain for 4 days without sufficient medical attention; (6) economic injuries, such as past and future medical expenses related to physical injuries sustained during his assault and exacerbated by delayed treatment, lost wages, attorneys fees to defend the charges against him; and (7) physical injuries due to the delay of additional medical care he desperately needed.

66.     At all times relevant to this Complaint, Defendant City of Easton and Defendant Easton Police Department maintained no policies whatsoever regarding the provision of auxiliary aids and services such as interpreter services to deaf individuals during police encounters, including arrests, interrogations, and other critical interactions.

67.     Defendant City of Easton and Defendant Easton Police Department had no policies or procedures in place to ensure that qualified interpreters would be readily available when needed, including during non-business hours and emergencies.

68.     Defendant City of Easton and Defendant Easton Police Department had no policies or procedures for contacting or contracting with interpreter agencies or for utilizing Video Remote Interpreting (VRI) as a readily available method of communication.

69.    Defendant City of Easton and Defendant Easton Police Department had no policies or procedures regarding alternative communication methods for deaf individuals who may not use ASL or have limited English proficiency.

70.    Defendant City of Easton and Defendant Easton Police Department had no policies or procedures for documenting requests for communication accommodations or for tracking compliance with the ADA and Section 504.

71.    Defendant City of Easton and Defendant Easton Police Department provided no training whatsoever to their officers, including Defendant Officer Snyder, regarding their legal obligations to accommodate deaf individuals under the ADA, Section 504, and other applicable laws.

72.    Defendant City of Easton and Defendant Easton Police Department provided no training to their officers on effective methods for communicating with deaf persons, including basic visual communication strategies and the importance of securing qualified interpreters.

73.    Defendant City of Easton and Defendant Easton Police Department provided no training to their officers on how to recognize situations where interpreters are required to ensure effective communication with deaf individuals, such as during arrests, interrogations, and other situations involving complex legal concepts or significant consequences.

74.    Defendant City of Easton and Defendant Easton Police Department provided no training to their officers on how to secure interpreter services, including knowledge of available resources, such as interpreter agencies and VRI technology, and procedures for requesting assistance.

75.    Similarly, Defendant Northampton County and Defendant Northampton County Department of Corrections maintained no policies or procedures for screening inmates for

communication needs, including deafness or limited English proficiency, upon intake or at any other time during their detention.

76.     Defendant Northampton County and Defendant Northampton County Department of Corrections maintained no policies or procedures for providing qualified interpreter services to deaf inmates during intake, medical evaluations, disciplinary hearings, classification meetings, educational programs, or any other critical interactions.

77.     Defendant Northampton County and Defendant Northampton County Department of Corrections maintained no policies or procedures for ensuring access to medical care for deaf inmates, including effective communication with medical staff through the use of qualified interpreters.

78.     Defendant Northampton County and Defendant Northampton County Department of Corrections maintained no policies or procedures for enabling deaf inmates to contact family members and legal counsel through appropriate telecommunication devices, such as TTYs or videophones, and interpreter services.

79.     Defendant Northampton County and Defendant Northampton County Department of Corrections maintained no policies or procedures for providing basic disability accommodations to deaf inmates to ensure their equal access to programs, services, and activities within the prison.

80.     The arrest and prosecution by the county/city defendants and their officers caused Plaintiff to suffer significant damages, including: (1) legal expenses exceeding $50,000 to defend against baseless charges; (2) lost employment opportunities and wages from the pending felony charge; (3) severe emotional distress and psychological trauma from facing imprisonment; (4) past and future medical expenses related to physical injuries sustained during his assault and

exacerbated by delayed treatment caused by all Defendants except for Defendant Eyer; and (5) reputational harm in the community where he lives and works.

81.     The criminal proceedings were terminated in Plaintiff's favor on October 30, 2024, when he was acquitted of all charges after twenty-one months of baseless prosecution.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE II OF THE ADA
**(Against Northampton County, Northampton County Department of Corrections, City of Easton, and Easton Police Department)**

82.     Mr. Veman incorporates and realleges all other allegations in this Complaint.

83.     At all times relevant to this action, Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, has been in full force and effect and has applied to the conduct of Defendants Northampton County, Northampton County Department of Corrections, City of Easton, and Easton Police Department.

84.     At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the Defendants' conduct.

85.     At all times relevant to this action, Mr. Veman has been substantially limited in the major life activities of hearing, and is considered a qualified individual with a disability as defined in the ADA, 42 U.S.C. § 12102(2).

86.     These Defendants are public entities as defined under Title II of the ADA, 42 U.S.C. § 12131(1).

87.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

88.     Federal Regulations implementing Title II of the ADA state that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

89.     Federal Regulations implementing Title II of the ADA state that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

90.     Federal Regulations implementing Title II of the ADA state that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

91.     The ADA states that auxiliary aids and services include, but are not limited to, "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103.

92.     Federal Regulations implementing Title II of the ADA provide examples of other effective methods of accommodation, such as qualified interpreters on-site or through video remote interpreting (VRI) services; real-time computer-aided transcription services; written materials; voice, text, and video-based telecommunications products and systems, including text

telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; and videotext displays. 28 C.F.R. § 35.104.

93.     When determining what type of auxiliary aid and service is necessary, "a public entity shall give primary consideration to the requests" of the individual with the disability.  28 C.F.R. § 35.160(b)(2).

94.     In 2007, the Department of Justice developed an ADA Title II Tool Kit "designed to teach state and local government officials how to identify and fix problems that prevent people with disabilities from gaining equal access to state and local government programs, services, and activities." *See* "ADA Best Practices Tool Kit for State and Local Governments" ("DOJ Tool Kit"), *available at* http://www.ada.gov/pcatoolkit/toolkitmain.htm.

95.     Chapter 3 of the DOJ Tool Kit, "General Effective Communication Requirements Under Title II of the ADA," is relevant to the general obligations of law enforcement entities to provide auxiliary aids and services, and refers at one point to planning ahead to have a contract in place for interpretive services for those time-sensitive situations in which it is necessary to communicate with a person with a hearing disability "who is *arrested*, injured, hospitalized, or involved in some other emergency." *Id*. at 9 (emphasis added).

96.     Defendants discriminated against Mr. Veman on the basis of disability by excluding him from participation in and denying him the benefits of their services, and by subjecting him to discrimination, in violation of the ADA.

97.     Defendants further discriminated against Mr. Veman by failing to ensure effective communication through the provision of auxiliary aids and services including qualified sign language interpreters and telecommunications devices such as videophones and/or TTYs.

98.     Defendants' failure to provide auxiliary aids and services necessary to ensure

effective communication to Mr. Veman denied him the same access to Defendants' services, benefits, activities, programs, or privileges as the access provided to hearing individuals.

99.    Defendants' failure to provide effective communication was not due to mere negligence or bureaucratic inaction, but rather reflected deliberate indifference to Mr. Veman's federally protected rights. Defendants were on notice of Mr. Veman's disability and need for accommodations, yet made conscious decisions not to provide required accommodations to ensure effective communication.

100.    The City of Easton and Easton Police Department demonstrated deliberate indifference by, *inter alia*: (1) failing to provide effective auxiliary aids and services for Mr. Veman despite notice of his disability and need for accommodations, (2) failing to establish any protocols for communicating with deaf individuals; and (3) refusing to utilize readily available on-site or remote interpreting services despite having the technological capability to do so.

101.    Northampton County and its Department of Corrections demonstrated deliberate indifference through their actions and inactions, including but not limited to (1) failing to provide necessary auxiliary aids and services for Mr. Veman despite notice of his disability and need for accommodations, resulting in the denial of appropriate medical services; (2) operating a detention facility without any accommodation plan for deaf inmates despite the known likelihood of encountering such individuals; (3) repeatedly refusing to provide any alternative telecommunication methods after acknowledging that standard telephone services were inaccessible to Mr. Veman; (4) failing to respond to written grievances about the lack of communication access; (5) ignoring Mr. Veman's repeated requests for interpreter services; and (6) failing to provide necessary medical services because Mr. Veman is deaf.

102.    Defendants further discriminated against Mr. Veman by failing to train their

employees to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the ADA.

103.    Defendants' violation of Mr. Veman's rights under the ADA caused him to suffer from discrimination, unequal treatment, and exclusion.

104.    Mr. Veman is therefore entitled to compensatory damages for the injuries and loss sustained as a result of Defendants' deliberate indifference of his rights under the ADA, as well as an award of attorneys' fees, costs, and disbursements, pursuant to the ADA.  *See* 42 U.S.C. § 12133.

## COUNT II

### VIOLATION OF THE REHABILITATION ACT
### (Against Easton Police Department, Northampton County Department of Corrections, Easton Hospital)

105.    Mr. Veman incorporates and realleges all other allegations in this Complaint.

106.    At all times relevant to this action, Section 504 of the RA, 29 U.S.C. § 794, was in full force and effect, and applied to the conduct of Defendants Easton Police Department, Northampton County Department of Corrections, and Easton Hospital.

107.    At all times relevant to this action, Mr. Veman has had substantial impairment to the major life activities of hearing and speaking within the meaning of 45 C.F.R. § 84.10, and therefore qualifies as an individual with a disability as defined in 29 U.S.C. § 708(20)(B).

108.    Pursuant to Section 504 of the RA, "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

109.    These Defendants discriminated against Mr. Veman on the basis of his disability

by denying him meaningful access to the services, programs, and benefits provided by Defendants to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication with Mr. Veman, in violation of Section 504 of the RA.

110.    These Defendants further discriminated against Mr. Veman by failing to ensure effective communication through the specific provision of a qualified, in-person interpreter or video remote interpreter.

111.    Defendants' failure to provide effective communication was not due to mere negligence or bureaucratic inaction, but rather reflected deliberate indifference to Mr. Veman's federally protected rights. Defendants were aware of their obligations under the ADA through training materials, DOJ guidance, and prior interactions with deaf individuals, yet made conscious decisions not to provide required accommodations.

112.    The City of Easton and Easton Police Department demonstrated deliberate indifference by, *inter alia*: (1) failing to provide necessary auxiliary aids and services for Mr. Veman despite notice of his disability and need for accommodations; (2) failing to establish any protocols for communicating with deaf individuals; and (3) refusing to utilize readily available on-site or remote interpreting services despite having the technological capability to do so.

113.    Northampton County and its Department of Corrections demonstrated deliberate indifference through their actions and inactions, including but not limited to: (1) failing to provide necessary auxiliary aids and services for Mr. Veman despite notice of his disability and need for accommodations; (2) operating a detention facility without any accommodation plan for deaf inmates despite the known likelihood of encountering such individuals; (3) repeatedly refusing to provide any alternative communication methods after acknowledging that standard telephone services were inaccessible to Mr. Veman; (4) failing to respond to written grievances about the

lack of communication access; (5) ignoring Mr. Veman's repeated requests for interpreter services; and (6) failing to provide necessary medical services because Mr. Veman is deaf.

114.    Easton Hospital demonstrated deliberate indifference through, *inter alia*: (1) failing to provide necessary auxiliary aids and services for Mr. Veman despite notice of his disability and need for sign language interpreters; and (2) proceeding with complex medical procedures without ensuring effective communication about risks and consent.

115.    Defendants Easton Police Department, Northampton County Department of Corrections, and Easton Hospital receive federal funding through various sources including but not limited to: Department of Justice grants, Medicare/Medicaid payments, federal law enforcement funding, and other federal financial assistance programs. Their receipt of these funds subjects them to the requirements of Section 504.

116.    These Defendants, through their agents, employees, and/or officers, further discriminated against Mr. Veman by failing to train their agents, employees, and/or officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the RA.

117.    Mr. Veman is entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of these Defendants' discriminatory conduct, as well as an award of attorneys' fees, costs, and disbursements, pursuant to the RA. *See* 29 U.S.C. § 794.

## COUNT III

## VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT
### (Against Defendant Easton Hospital)

118.    Mr. Veman incorporates and realleges all other allegations in this Complaint.

119.    At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("ACA") has been in full force and effect and has applied to Defendant City

of Easton's conduct.

120.    At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the ACA, 42 U.S.C. § 18116.

121.    At all times relevant to this action, Defendant Easton Hospital received federal financial assistance, including but not limited to Medicare and Medicaid payments, and has been principally engaged in the business of providing healthcare. Thus, this Defendant is a health program or activity receiving federal financial assistance under 42 U.S.C. § 18116(a).

122.    Under Section 1557 of the ACA, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

123.    At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language and he has a limited ability to read, write, speak, or understand English. Plaintiff has been an individual with limited English ability within the meaning of Section 1557 of the ACA.

124.    Under the ACA, federal regulations adopt "the standards found at 28 CFR 35.160 through 35.164," which come from Title II of the Americans with Disabilities Act. 45 C.F.R. § 92.202(a).

125.    Under the ACA, federal regulations state that a "[covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . .

In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b), *adopted by* 45 C.F.R. § 92.202(a). This regulation authoritatively construes the ACA and was violated by Defendant Easton Hospital.

126.    Under the ACA, federal regulations state that a covered entity "must take reasonable steps to ensure meaningful access to such programs or activities by limited English proficient individuals," 45 C.F.R. § 92.201(a), and that where an individual requires the provision of language assistance services, such services "must be provided free of charge, be accurate and timely, and protect the privacy and independence of the individual with limited English proficiency," 45 C.F.R. § 92.201(b). This regulation authoritatively construes the ACA and was violated by Defendant Easton Hospital.

127.    Federal regulations implementing the ACA further require that a covered entity that provides individuals with disabilities "qualified interpreters via VRI services shall ensure that it provides–(1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face, and the participating person's face, regardless of the person's body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 45 C.F.R. § 92.202(f).

128.    The ACA, by incorporating the enforcement mechanism of the Rehabilitation Act,

extends a cause of action to Plaintiff—that is, "any person aggrieved" by discrimination in violation of the Rehabilitation Act. 42 U.S.C. § 18116(a). Plaintiff is therefore entitled to the same categories of damages under his ACA claim as under his Rehabilitation Act claim.

129.    Defendant Easton Hospital demonstrated deliberate indifference through, *inter alia*: (1) failing to provide necessary auxiliary aids and services for Mr. Veman despite notice of his disability and need for accommodations; and (2) proceeding with complex medical procedures without ensuring effective communication about risks and consent.

130.    Defendant Easton Hospital, upon information and belief, has not implemented policies, procedures, and training of staff necessary to ensure compliance with the ACA.

131.    Plaintiff is therefore entitled to declaratory and injunctive relief, nominal damages, compensatory damages, and attorneys' fees, costs, and disbursements for the injuries and loss he sustained because of the Defendant's discriminatory conduct and deliberate indifference as alleged under 42 U.S.C. § 18116(a).

## COUNT IV

### SECTION 1983 VIOLATIONS
**(Against Defendants City of Easton, Easton Police Department, Officer Matthew Snyder (in his personal and official capacities), Northampton County, Assistant District Attorney Robert Eyer (in his personal and official capacities), and Northampton County Department of Corrections)**

132.    Mr. Veman incorporates and realleges all other allegations in this Complaint.

133.    Defendants City of Easton, Easton Police Department, and Officer Matthew Snyder, acting under color of state law, deprived Plaintiff of his clearly established constitutional rights under the Fourth and Fourteenth Amendments by arresting him without probable cause and based solely on unsubstantiated statements from hearing individuals.

134.    Defendants City of Easton, Easton Police Department, and Officer Matthew Snyder directly violated Plaintiff's constitutional rights effectuating an arrest without probable cause after deliberately ignoring his attempts to communicate, and failing to investigate obvious exculpatory evidence.

135.    Defendants City of Easton, Easton Police Department, and Officer Matthew Snyder's conduct demonstrated deliberate indifference through: (1) arresting Plaintiff without probable cause while deliberately preventing him from providing his account; (2) ignoring visible evidence of Plaintiff's victim status; (3) failing to document exculpatory evidence; and (4) relying solely on statements from witnesses with documented credibility issues.

136.    Defendants Northampton County and Northampton County Department of Corrections further violated Plaintiff's Fourteenth Amendment rights to due process and equal protection by systematically denying him effective communication during critical stages of the criminal process, including his detention such that he was held without being aware of the charges brought against him and deprived of a timely opportunity to contact counsel.

137.    Defendants Northampton County and Northampton County Department of Corrections further violated Plaintiff's Fourteenth Amendment rights by failing to provide Plaintiff necessary medical care, including failing to adequately treat his injuries and pain, causing him greater suffering than was appropriate.

138.    The actions and omissions of Defendants City of Easton, Easton Police Department, Officer Matthew Snyder, Northampton County, and Northampton County Department of Corrections each violated Plaintiff's clearly established constitutional rights under the Fourth Amendment to be free from unreasonable seizure, and the Fourteenth Amendment rights to due process and equal protection.

139.    Northampton County and Defendant Eyer are liable for the malicious prosecution in violation of the 14th Amendment of Mr. Veman through their deliberate actions and policies that directly contributed to his wrongful prosecution. Specifically, the county and its prosecutors, including Defendant Eyer, pursued and continued the prosecution for twenty-one months while in possession of extensive exculpatory evidence.

140.    From May 2024 through October 2024, Defendant Eyer received multiple letters and communications from Plaintiff's counsel detailing extensive exculpatory evidence, including: (1) police records documenting the pattern of false domestic violence reports at the same residence by the male attacker and/or his female companion; (2) photographic evidence contradicting claims of forced entry; (3) evidence that the male attacker's female companion had invited Plaintiff to the residence; and (4) documentation of the male attacker's history of violence at the property. Despite receiving this evidence, Defendant Eyer continued prosecuting Plaintiff for an additional 5 months until Plaintiff's acquittal in October 2024. Defendant Eyer's decision to continue prosecution despite clear exculpatory evidence demonstrated malice and reckless disregard for Plaintiff's rights.

141.    The County, under Defendant Eyer's direction, ignored mounting exculpatory evidence including but not limited to: (1) police photographs showing intact doors contradicting forced entry claims; (2) eight documented incidents showing the female companion's pattern of making and then retracting assault allegations; and (3) police reports documenting male attackers violent conduct at the same residence. Despite this evidence demonstrating the unreliability of the complaining witnesses, Defendant Eyer maintained the prosecution for 21 months, causing Plaintiff substantial harm.

142.    Defendant Northampton County and Defendant Eyer demonstrated malice through, *inter alia*: (1) continuing prosecution despite photographic evidence disproving forced entry claims central to the criminal trespass charge; (2) relying solely on statements from the male attacker and his female companion while knowing their documented history of false reports to police; (3) refusing to interview other witnesses; (4) maintaining felony charges for 21 months despite lacking probable cause; and (5) intentionally disregarding the fact that officers deliberately avoided obtaining Plaintiff's account of events when arresting him.

143.    Defendant Eyer demonstrated deliberate indifference to Plaintiff's constitutional rights by: (1) continuing prosecution while deliberately preventing Plaintiff from providing exculpatory evidence by refusing interpreter services; (2) maintaining prosecution despite documentary evidence of complainants' pattern of false reports; (3) ignoring extensive photographic and documentary evidence contradicting the prosecution's theory; and (4) proceeding with felony charges carrying potential imprisonment while knowingly relying on demonstrably unreliable witness statements.

144.    Despite Defendants Eyer's unconstitutional prosecution of Mr. Veman, Mr. Veman was acquitted on all charges.

145.    These Defendants each maintained policies and practices that, upon information and belief, were each moving forces behind the conduct that injured Plaintiff, and demonstrated deliberate indifference to the constitutional rights of deaf individuals, including their failure to train officers on appropriate communication methods and their refusal to establish procedures for securing interpreter services.

146.    Upon information and belief, as to Defendants City of Easton, Easton Police Department, Northampton County, and Northampton County Department of Corrections, there

was a policy or custom or practice or set of policies of not providing ASL interpreters or other accommodations to deaf and disabled individuals that resulted in a patently obvious risk that there would be violations of these individuals' constitutional rights.

147.    These Defendants' failure to provide effective communication was not due to mere negligence or bureaucratic inaction, but rather reflected deliberate indifference to Mr. Veman's federally protected rights. Defendants were aware of their obligations under the ADA through training materials, DOJ guidance, and prior interactions with deaf individuals, yet made conscious decisions not to provide required accommodations with the obvious risk that there would be breakdowns in communication that would result in violations of constitutional rights.

148.    Defendant City of Easton and Defendant Easton Police Department demonstrated deliberate indifference by: (1) arresting Mr. Veman without probable cause despite obvious exculpatory evidence and failing to take the necessary steps to communicate with him; (2) failing to establish any protocols for communicating with deaf individuals; (3) refusing to utilize readily available remote interpreting services despite having the technological capability to do so.

149.    Defendant Northampton County and Defendant Northampton County Department of Corrections demonstrated deliberate indifference through their actions and inactions, including but not limited to: (1) failing to provide necessary auxiliary aids and services for Mr. Veman despite notice of his disability and need for accommodations; (2) operating a detention facility without any accommodation plan for deaf inmates despite the known likelihood of encountering such individuals; (3) repeatedly refusing to provide any alternative communication methods after acknowledging that standard telephone services were inaccessible to Mr. Veman; (4) failing to respond to written grievances about the lack of communication access; (5) ignoring Mr. Veman's repeated requests for interpreter services; and (6) failing to provide necessary medical services

because Mr. Veman is deaf.

150.    Defendants' failure to provide any means of communication deprived Plaintiff of: (1) his liberty interest in being free from unjustified detention; (2) his due process right to understand the nature of charges against him; (3) his right to be free from deliberate indifference to serious medical needs; and (4) his right to meaningful access to counsel.

151.    The direct and foreseeable result of Defendants' actions and policies was the violation of Plaintiff's clearly established constitutional rights through: (1) arrest without probable cause; (2) denial of necessary medical care; (3) deprivation of access to counsel and family; and (4) conditions of confinement that posed a substantial risk of serious harm.

152.    The municipal Defendants are liable under the *Monell* doctrine for their systematic failure to train, supervise, and establish appropriate policies regarding interactions with deaf individuals, which directly led to the violations of Plaintiff's constitutional rights.

153.    The municipal Defendants' failure to train their employees regarding deaf communications was so patently obvious that it constituted deliberate indifference, as encounters deaf individuals was predictable in their jurisdictions yet maintain no training programs, policies, or procedures for ensuring effective communication

154.    These constitutional violations caused Plaintiff's wrongful arrest, extended detention, and severe deprivation of liberty without due process of law.

## COUNT V

### MALICIOUS PROSECUTION
**(Against Defendants Northampton County, Assistant District Attorney Robert Eyer (in his official and personal capacities), City of Easton, Easton Police Department, Officer Matthew Snyder (in his official and personal capacities))**

155.    Mr. Veman incorporates and realleges all other allegations in this Complaint.

156.    Defendants Easton Police Department and Officer Snyder acted with malice in wrongfully arresting and pursuing charges against Plaintiff, as evidenced by their deliberate disregard of exculpatory evidence and their reliance on demonstrably unreliable witness statements.

157.    The City of Easton, Easton Police Department, and Officer Snyder are liable for the malicious prosecution of Mr. Veman through deliberate actions and policies that directly contributed to his wrongful prosecution. Specifically, the City of Easton, through its police department and supervising officials, (1) accepted witness statements from hearing individuals while excluding evidence and statements from deaf individuals by failing to provide communication accommodations; (2) conducted an incomplete and biased investigations that favor hearing witnesses; (3) ignored clear evidence of Mr. Veman's victim status, including severe facial injuries and defensive wounds documented in police photographs, in favor of unsubstantiated allegations from his attacker; and (4) arrested him without probable cause.

158.    Northampton County and Defendant Eyer are liable for the malicious prosecution of Mr. Veman through their deliberate actions and policies that directly contributed to his wrongful prosecution. Specifically, the county and its prosecutors, including Defendant Eyer, pursued and continued the prosecution for twenty-one months while in possession of extensive exculpatory evidence.

159.    From May 2024 through October 2024, Defendant Eyer received multiple letters and communications from Plaintiff's counsel detailing extensive exculpatory evidence, including: (1) police records documenting the pattern of false domestic violence reports at the same residence by the male attacker and/or his female companion; (2) photographic evidence contradicting claims of forced entry; (3) evidence that the male attacker's female companion had invited Plaintiff to the

residence; and (4) documentation of the male attacker's history of violence at the property. Despite receiving this evidence, Defendant Eyer continued prosecuting Plaintiff for an additional 5 months until Plaintiff's acquittal in October 2024. Defendant Eyer's decision to continue prosecution despite clear exculpatory evidence demonstrated malice and reckless disregard for Plaintiff's rights.

160.    The County, under Defendant Eyer's direction, ignored mounting exculpatory evidence including but not limited to: (1) police photographs showing intact doors contradicting forced entry claims; (2) eight documented incidents showing the female companion's pattern of making and then retracting assault allegations; and (3) police reports documenting Ragland's violent conduct at the same residence. Despite this evidence demonstrating the unreliability of the complaining witnesses, Defendant Eyer maintained the prosecution for 21 months, causing Plaintiff substantial harm.

161.    Defendant Northampton County and Defendant Eyer demonstrated malice through, *inter alia*: (1) continuing prosecution despite photographic evidence disproving forced entry claims central to the criminal trespass charge; (2) relying solely on statements from the male attacker and his female companion while knowing their documented history of false reports to police; (3) refusing to interview other witnesses; (4) maintaining felony charges for 21 months despite lacking probable cause; and (5) intentionally disregarding the fact that officers deliberately avoided obtaining Plaintiff's account of events when arresting him.

162.    Defendant Eyer demonstrated deliberate indifference to Plaintiff's constitutional rights by: (1) continuing prosecution while deliberately preventing Plaintiff from providing exculpatory evidence by refusing interpreter services; (2) maintaining prosecution despite documentary evidence of complainants' pattern of false reports; (3) ignoring extensive

photographic and documentary evidence contradicting the prosecution's theory; and (4) proceeding with felony charges carrying potential imprisonment while knowingly relying on demonstrably unreliable witness statements.

163.    The City of Easton, Easton Police Department, and Officer Snyder demonstrated malice by (1) accepting witness statements from hearing individuals while excluding evidence and statements from deaf individuals by failing to provide communication accommodations; (2) conducting an incomplete and biased investigations that favored hearing witnesses; (3) ignoring clear evidence of Mr. Veman's victim status, including severe facial injuries and defensive wounds documented in police photographs, in favor of unsubstantiated allegations from his attacker; and (4) arresting him without probable cause.

164.    These Defendants' actions directly contributed to the malicious prosecution through a clear chain of events: The City's failure to provide communication accommodations prevented Mr. Veman from providing his account of events during the initial investigation; The resulting one-sided investigation led to probable cause determinations based solely on statements from the individuals who attacked Mr. Veman; The county's prosecutors (at the direction of Defendant Eyer) relied on this incomplete investigation to pursue charges despite mounting exculpatory evidence; the prosecution continued for twenty-one months, causing Mr. Veman substantial harm, until his eventual acquittal after only minutes of jury deliberation.

165.    The criminal proceedings were terminated in Plaintiff's favor on October 30, 2024, when he was acquitted of all charges after twenty-one months of baseless prosecution.

166.    Defendants' arrest and prosecution caused Plaintiff to suffer significant damages, including: (1) legal expenses exceeding $50,000 to defend baseless charges; (2) lost employment opportunities and wages from the pending felony charge; (3) severe emotional distress and

psychological trauma from facing imprisonment; and (4) reputational harm in the community where he lives and works.

## COUNT VI

### RECKLESS INFLICTION OF EMOTIONAL DISTRESS
**(Against Defendants City of Easton, Easton Police Department, Northampton County, Northampton County Department of Corrections, Officer Matthew Snyder (in his official and personal capacities), and Assistant District Attorney Robert Eyer (in his official and personal capacities))**

167.    Mr. Veman incorporates and realleges all other allegations in this Complaint.

168.    Defendants City of Easton, Easton Police Department, and Officer Snyder wrongfully arrested Plaintiff without probable cause, failed to accommodate him during any part of the arrest and booking process, and ignored his pleas for medical attention despite obvious injuries, and these Defendants, in addition to Defendants Northampton County and Eyer, maliciously prosecuted him as set forth above.

169.    During his four-day detention, Defendants Northampton County and Northampton County Department of Corrections held Plaintiff in communication isolation, depriving him of the ability to report, request, and receive treatment for ongoing pain from his injuries, understand the nature of the charges against him, or contact family members to arrange bail.

170.    Defendants Northampton County, Northampton County Department of Corrections, City of Easton, Easton Police Department, and Officer Snyder all owed Plaintiff a duty of care at all relevant times, as an individual in these Defendants' care. Defendants Northampton County and Defendant Eyer also owed Plaintiff a duty of care as an individual facing criminal prosecution within their jurisdiction. Nevertheless, these Defendants breached these duties through the actions and inactions set forth above.

171.    These Defendants' intentional and/or reckless conduct caused severe and debilitating emotional distress to Plaintiff, in addition to physical injuries in the form of worsening pain and symptoms from his initial assault that were directly caused by these Defendants' failure to accommodate and treat Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alex Veman respectfully requests that this Court enter judgment in his favor and award the following relief:

A.    Compensatory damages in an amount to be determined at trial for:

    a. Past and future medical expenses related to physical injuries sustained during the incident and exacerbated by delayed treatment;

    b. Emotional distress, psychological trauma, and mental anguish;

    c. Lost wages and diminished earning capacity;

    d. Legal fees incurred in defending against wrongful criminal charges;

    e. Damage to reputation and standing in the community; and

    f. Pain and suffering resulting from inadequate medical care during incarceration.

B.    Punitive damages against Defendant Officer Snyder in his individual capacity to punish and deter malicious conduct toward deaf individuals.

C.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the ADA, the Rehabilitation Act, Section 1557, Section 1983, and other applicable laws;

D.    Nominal Damages;

E.     A declaration that the city and county Defendants' policies, practices, and conduct

       as alleged herein violated Plaintiff's rights under Title II of the ADA, Section 504

       of the Rehabilitation Act, and/or Section 1983; and

F.     Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Dated: January 16, 2025                          Respectfully submitted,

                                                 Andrew Rozynski, Esq. (NY# 5054465)*
                                                 arozynski@eandblaw.com
                                                 EISENBERG & BAUM, LLP
                                                 24 Union Square East, PH
                                                 New York, NY 10003
                                                 212-353-8700 (tel.)
                                                 212-353-1708 (fax)
                                                 *Attorneys for Plaintiff*

                                                 *Pro Hac Vice to Be Filed*


                                                 */s/ Mary Vargas*
                                                 Mary Vargas
                                                 Stein & Vargas, LLP
                                                 1717 K Street NW, Suite 900
                                                 Washington, DC 20006
                                                 240-793-3185 (tel.)
                                                 888-778-4620 (fax)