IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEX VEMAN | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO.  5:25-cv-00291-JLS |
| | : | |
| CITY OF EASTON, ET AL. | : | |
| | : | |

**MEMORANDUM**

SCHMEHL, J.                                                                APRIL 8,   2026

Plaintiff, a deaf man who relies on American Sign Language ("ASL") as his primary means of communication, brought this action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. §794 and 42 U.S.C. §1983, claiming that Defendants City of Easton, Easton Police Department, Officer Matthew Snyder, Easton Hospital, Northampton County, Northampton Department of Corrections, and Northampton County Assistant District Attorney Robert Eyer ("ADA Eyer"), in his official and individual capacities, have consciously chosen to operate with a flagrant disregard for the rights of deaf individuals, by failing to provide interpreter services.

In his First Amended Complaint ("FAC"), Plaintiff alleges he was wrongfully arrested despite being the victim of an assault on January 18, 2023, that resulted in serious injuries. Specifically, Plaintiff alleges that "[d]espite Plaintiff's visible injuries and desperate attempts to communicate, Defendant City of Easton, Defendant Easton Police Department, and Defendant Officer Snyder failed to obtain a qualified interpreter, or any other effective aids for communication to ensure effective communication with Plaintiff. Defendant Officer Snyder did

1

not get any statement from Plaintiff, either written or through ASL. Plaintiff was wrongfully arrested based entirely on the verbal statements of self-interested witnesses." [ECF 17 at ¶ 6.] Following his arrest, Plaintiff claims he was incarcerated at Northampton County Prison for four days, during which he was denied effective communication through qualified ASL interpreters, necessary medical care for his significant injuries and communication with family or counsel. Plaintiff further alleges that Defendant ADA Eyer subsequently initiated and maintained a malicious prosecution against him for nearly two years, despite possessing substantial exculpatory evidence, until Plaintiff was ultimately acquitted by a jury.

Defendants Northampton County, Northampton Department of Corrections and ADA Eyer filed a collective "partial motion to dismiss Complaint on behalf of Defendant, Northampton County, Northampton County Department of Corrections, and Northampton County Assistant District Attorney Robert Eyer." [ECF 27.] As part of the motion, ADA Eyer contended that the action should be dismissed as to him in his individual capacity based on the doctrines of absolute and qualified immunity and in his official capacity based on the Eleventh Amendment. [Id. at p.3.] After careful consideration of the Motion, the Court decided it would be best to allow this case to proceed to the discovery phase after which the moving Defendants could file a motion for summary judgment based on a full record. Therefore, by Order dated August 26, 2025, the Court, in part, denied "Defendant Northampton County's motion to dismiss." [ECF 44.] The Court did not specify in its Order whether it was denying the motion only as to Defendants Northampton County and Northampton Department of Corrections and not to ADA Eyer. Before the Court could clarify its intent, ADA Eyer, on August 28, 2025, filed an appeal with the Court of Appeals for the Third Circuit, thereby divesting this Court of further jurisdiction over this issue. [ECF 45.]

**2**

On October 27, 2025, ADA Eyer filed a motion pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure requesting the Court clarify whether its Order denying the Northampton County Defendants motion to dismiss applied to Defendant ADA Eyer as well. [ECF 57.] After reviewing the motion, the Court concluded that its August 26, 2025 Order did not apply to ADA Eyer. However, since an appeal to the Third Circuit had already been taken, thereby divesting the Court of jurisdiction to consider the Rule 60(b)(1) motion, the Court issued an Order pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, stating it was "inclined to grant the outstanding Rule 60(b)(1) motion and clarify that the portion of its Order of August 26, 2025 denying the Northampton County's motion to dismiss applied only to Defendants Northampton County and Northampton Department of Corrections and not to Defendant ADA Eyer, thereby obviating the need for an appeal by ADA Eyer." [ECF 61.] The Court further indicated that it would then "independently consider ADA Eyer's motion to dismiss the Amended Complaint as to him in his individual capacity based on absolute and qualified immunity and in his official capacity based on the Eleventh Amendment." *Id*. On March 9, 2026, the Court of Appeals for the Third Circuit remanded the case to this Court "for the limited purposes of considering Defendant Robert Eyer's motion to dismiss based on absolute immunity, qualified immunity, and Eleventh Amendment immunity." [ECF 64.] The Court now considers those issues.

Under Rule 60(b)(1), a party may move for relief from judgment based on a "mistake," which includes legal error. *See Kemp v. United States*, 596 U.S. 528, 533-34 (2022). In its Order of August 26, 2025, the Court did not specify whether it was denying the Northampton County Defendants motion to dismiss only as to Defendants Northampton County and Northampton Department of Corrections and not to ADA Eyer. [ECF 44.] The Court wishes to do so now and therefore will grant ADA Eyer's Rule 60(b)(1) motion. The Court now will address ADA Eyer's

**3**

Rule 12(b)(6) motion to dismiss the Amended Complaint as to him in his individual capacity based on absolute immunity and to dismiss the Amended Complaint as to him in his official capacity based on the Eleventh Amendment.

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Only if "the '[f]actual allegations ... raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"Prosecutors enjoy absolute immunity for the decision to initiate a prosecution, for evaluation of evidence collected by investigators, and even for failure to conduct adequate investigation before filing charges." *Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (internal citations omitted). *See also  Kulwicki v. Dawson*, 969 F.2d 1454, 1463-64 (3d Cir. 1992)**.** But "absolute immunity does not extend to '[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Yarris v. Cnty. of Del.*, 465 F.3d 129, 135 (3d Cir. 2006) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)). When a defendant

**4**

asserts absolute immunity, "the onus is on the prosecutor to demonstrate that absolute immunity should attach to each act he [or she] allegedly committed that gave rise to a cause of action." *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (internal quotation marks and citation omitted).

In analyzing whether absolute immunity attaches, courts first "ascertain just what conduct forms the basis for the plaintiff's cause of action." *Roberts v. Lau*, 90 F.4th 618, 625 (3d Cir. 2024) (citation omitted). Second, courts "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id*. This analysis "focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Id*. at 627 (quoting *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008)). However, the "ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given claim." *Fogle*, 957 F.3d at 161.

"To earn the protections of absolute immunity at the motion-to-dismiss stage, a defendant must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." *Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 187 (3d Cir. 2020) (cleaned up). "[T]hat burden is uniquely heavy" at the motion-to-dismiss stage "because ... 'it is the [prosecutor's] conduct *as alleged in the complaint* that is scrutinized." *Fogle*, 957 F.3d at 160 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)) (citing *Odd*, 538 F.3d at 207).

In his FAC, Plaintiff asserts a federal Section 1983 claim against ADA Eyer for malicious prosecution (Count IV), and state law claims for malicious prosecution (Count V) and reckless infliction of emotional distress. (Count VI). The pertinent allegations are as follows:

**5**

From May 2024 through October 2024, Defendant Eyer received multiple letters and communications from Plaintiff's counsel detailing extensive exculpatory evidence, including: (1) police records documenting the pattern of false domestic violence reports at the same residence by the male attacker and/or his female companion; (2) photographic evidence contradicting claims of forced entry; (3) evidence that the male attacker's female companion had invited Plaintiff to the residence; and (4) documentation of the male attacker's history of violence at the property. Despite receiving this evidence, Defendant Eyer continued prosecuting Plaintiff for an additional 5 months until Plaintiff's acquittal in October 2024. Defendant Eyer's decision to continue prosecution despite clear exculpatory evidence demonstrated malice and reckless disregard for Plaintiff's rights.

(FAC ¶ 174.)

The County, under Defendant Eyer's direction, ignored mounting exculpatory evidence including but not limited to: (1) police photographs showing intact doors contradicting forced entry claims; (2) eight documented incidents showing the female companion's pattern of making and then retracting assault allegations; and (3) police reports documenting Ragland's violent conduct at the same residence. Despite this evidence demonstrating the unreliability of the complaining witnesses, Defendant Eyer maintained the prosecution for 21 months, causing Plaintiff substantial harm.

(FAC ¶ 175.)

Defendant Northampton County and Defendant Eyer demonstrated malice through, inter alia: (1) continuing prosecution despite photographic evidence disproving forced entry claims central to the criminal trespass charge; (2) relying solely on statements from the male attacker and his female companion while knowing their documented history of false reports to police; (3) refusing to interview other witnesses; (4) maintaining felony charges for 21 months despite lacking probable cause; and (5) intentionally disregarding the fact that officers deliberately avoided obtaining Plaintiff's account of events when arresting him.

(FAC ¶ 176.)

Defendant Eyer demonstrated deliberate indifference to Plaintiff's constitutional rights by: (1) continuing prosecution while deliberately preventing Plaintiff from providing exculpatory evidence by refusing interpreter services; (2) maintaining

**6**

> prosecution despite documentary evidence of complainants' pattern of false reports; (3) ignoring extensive photographic and documentary evidence contradicting the prosecution's theory; and (4) Proceeding with felony charges carrying potential imprisonment while knowingly relying on demonstrably unreliable witness statements.

(FAC ¶ 177.)

In short, Plaintiff alleges that ADA Eyer maintained a prosecution of Plaintiff for 21 months despite failing to consider alleged exculpatory evidence. However, the filing of charges are at the core of the prosecutorial function, and "[a] prosecutor is absolutely immune when making [the decision to initiate a prosecution], even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki,* 969 F.2d at 1464. ADA Eyer evaluated the evidence over a 21-month period and then made a decision to continue the prosecution through trial. Such actions are textbook prosecutorial functions.

Accordingly, ADA Eyer is entitled to absolute immunity for his actions taken in his individual capacity. *Id.*

As to the claims asserted against ADA Eyer in his official capacity, a claim against a governmental actor in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (citation omitted.) Therefore, in order to establish such a claim, a plaintiff must show "an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Patterson v. City of Phila.,* No. 08–2140, 2009 WL 1259968, at *10 (E.D.Pa. May 1, 2009) (quoting *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990)). Under Pennsylvania law, however, assistant district attorneys such as ADA Eyer do not possess policymaking authority for the District Attorney's

Office. *Id.; see also Payson v. Ryan,* No. 90–1873, 1992 WL 111341, at * 11 (E.D.Pa. May 14, 1992), *aff'd,* 983 F.2d 1051 (3d Cir.1992). As a result, ADA Eyer cannot be held liable in his official capacity as a matter of law.

Finally, with respect to Plaintiff's state law claims against ADA Eyer for malicious prosecution and reckless infliction of emotional distress, ADA Eyer, as a "high public official," is entitled to absolute immunity from such state law tort claims. *Brown v. City of Philadelphia,* 2024 WL 1660544, at *6 (E.D. Pa. April 17, 2024); *Joobeen v. City of Phila. Police Dep't,* No. 09–1376, 2010 WL 844587, at *6 (E.D.Pa. Mar. 4, 2010); *Domenech v. City of Philadelphia,* No. 06-1325, 2007 WL 172375, at *4 (E.D. Pa. Jan 18, 2007); *Durham v. McElwyn,* 565 Pa. 163, 772 A.2d 68, 69 (Pa.2001) ("To subject assistant district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous or the most judgment-proof from vigorously performing their prosecutorial functions, and would result in criminal going unpunished.").